J-A22002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSHUA R. SIRCHIO AND ALLISON D. SIRCHIO, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| | : | No. 3444 EDA 2016 |
| COREY MACDOUGALL | : | |

Appeal from the Judgment Entered January 5, 2017
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2013-33448

BEFORE:   BOWES, J., LAZARUS, J., and PLATT*, J.

DISSENTING MEMORANDUM BY BOWES, J.:          Filed July 20, 2018

Since I believe the trial court erroneously permitted the defense expert

to testify beyond the fair scope of his expert report in violation of Pa.R.C.P.

4003.5(c), and that the error was prejudicial to the Sirchios, I would grant a

new trial.   The fact that counsel for the Sirchios availed himself of the

opportunity to cross-examine the expert and challenge his findings, and did

so quite capably, could not compensate for the prejudice engendered by the

Sirchios' lack of an expert to rebut that testimony.   Thus, I respectfully

dissent.

The record reveals the following.  Defense expert Daniel Honig, P.E., a

civil engineer by education and training, supplied a report containing his

opinions "based on reasonable engineering assumptions."   Honig Expert

Report, 1/12/16, at 9.  He opined therein that Mr. MacDougall complied with

_____
\* Retired Senior Judge assigned to the Superior Court.

the borough code requiring property owners to clear their sidewalks within twenty-four hours of the cessation of precipitation. According to Mr. Honig, the sidewalk was clear, and the fall "simply occurred due to the failure of Mr. Sirchio to exercise proper caution when traversing an exterior walkway affected by ongoing inclement weather conditions." *Id*. at 8. In support of that opinion, he pointed out that Mr. Sirchio "elected to walk across the grass where the sidewalk had not been cleared[,]" but chose to walk on the sidewalk adjacent to Mr. MacDougall's property where he fell. *Id*.

At trial, defense counsel elicited Mr. Honig's opinion that Mr. MacDougall had complied with the borough code and cleared his sidewalk within the requisite timeframe. He then inquired whether the expert saw evidence that Mr. MacDougall used ice-melting chemicals on the walk. An objection to this line of questioning, based on it being beyond the scope of the expert's report, was sustained by the trial court. Defense counsel then asked Mr. Honig about "conspicuity" and "discernibility." The witness explained that conspicuity refers to "what was visually discernible as [Mr. Sirchio] was walking down the sidewalk." N.T. Jury Trial Vol. II, 6/21/16, at 167. He explained that the portion of the sidewalk where Mr. Sirchio fell, "which was bare, would be discernible even at night under low light conditions." *Id*. Defense counsel then asked whether, based on Mr. Sirchio's deposition testimony and "the photographs that you had available for your review, including that nighttime photograph, do you believe that some or any of the icy condition on the

sidewalk would have been conspicuous to Mr. Sirchio?" *Id*. at 167-68. Plaintiffs' counsel objected and the court sustained the objection. The following exchange ensued.

[DEFENSE COUNSEL]: That was directly addressed in his report.

THE COURT: Speculation? Basis?

[PLAINTIFFS' COUNSEL]: I am looking at his report. I don't see anything about conspicuity or anything like that. I don't know where this is coming from right now.

THE COURT: Could you show me in the report?

[DEFENSE COUNSEL]: I forget. Do you have a copy of the report?

THE COURT: I do not.

[DEFENSE COUNSEL]: Your Honor, if I could refer you to page 8, the first paragraph under conclusions, while the term conspicuity isn't specifically referenced, there is general reference –

THE COURT: The first paragraph?

[DEFENSE COUNSEL]: Page 8, the first paragraph.

THE COURT: I got it. I am going to give you a little leeway. I will allow him to ask the question.

[PLAINTIFFS' COUNSEL]: Judge, could I have clarification for the record?

THE COURT: Yes.

[PLAINTIFFS' COUNSEL]: There is nothing in here that talks about whether or not this would be visible at nighttime.

THE COURT: It does not. But I will allow him to ask a general question on this topic.

[PLAINTIFFS' COUNSEL]: Fair enough.[1]

[DEFENSE COUNSEL]: It must be a new question or can I use the question that is already on the record?

THE COURT: I don't remember the question anymore. If you could ask that question again, go ahead.

[DEFENSE COUNSEL]: I will attempt to.

BY [DEFENSE COUNSEL]:

> Q. Mr. Honig, I don't know if you remember the question that I asked you or not, I think I might be paraphrasing here, I asked you based on your review of Mr. Sirchio's deposition testimony, and the photographs that you had available for your review, perhaps more specifically Plaintiff's Exhibit 1, the nighttime photograph, do you believe that some or any of the icy condition on the sidewalk would have been conspicuous to Mr. Sirchio on that evening?
>
> A. Well, what I recall reading in Mr. Sirchio's deposition was that he was well aware of the active weather conditions on the pedestrian sidewalk or walkway. And understanding at that time of night, that type of season, and these conditions, certainly the active weather conditions would be discernible. They wouldn't be accurate, very precisely discernible, but it

---

[1] My colleagues make a point of emphasizing that the Sirchios' counsel responded "Fair enough[,]" after the court ruled that defense counsel could ask the expert a general question on the visibility of black ice, and that "He did not object again." Majority Memorandum, at 14. To the extent that the majority contemplated finding waiver based on counsel's response, I offer my thoughts in this regard.

Plaintiffs' counsel objected, stated the basis for his objection, and argued its merits. Defense counsel responded, and the court ruled. I submit Plaintiffs' counsel's words were nothing more than a polite acknowledgment of, and deference to, the court's ruling. These and similar expressions merely signal that the argument is concluded. I submit that such expressions do not connote withdrawal of the objection or acquiescence in the court's reasoning, and that we should not be too quick to find waiver in the face of civility.

certainly would be discernible. In other words, if I was looking at the clean concrete versus the darker stain next to that, that would show up as a stain. When I say stain, a mark, whether it is ice, water, or a combination thereof. But that would be discernible, and clearly discernible. And when you are seeing down a walkway like that, either walking on the grass next to it, or stepping over to step on the sidewalk, that would be, my understanding of how you proceed with caution on your own behalf.

N.T. Jury Trial Vol. II, 6/21/16, at 168-70.

The Sirchios' motion for a new trial focused on the improper admission of Mr. Honig's expert opinion that the darker stained ice-covered concrete would be discernible next to the clean concrete, and that Mr. Sirchio should have seen and avoided the ice. Mr. Honig rendered no opinion at all in his report as to whether the ice patch was conspicuous. He did not comment on any alleged difference in color between the ice and the dry portion of the sidewalk that would have made the ice visible. His expert report certainly did not contain any opinion that Mr. Sirchio should have seen the ice prior to his fall based on the lighting and other conditions at the time. Nevertheless, over objection, Mr. Honig was permitted to offer expert opinion that Mr. Sirchio should have seen the ice patch.

In support of their contention that the trial court erred, the Sirchios allege the following. In reliance upon Mr. Honig's report, the Sirchios had proceeded to trial on the reasonable assumption that this issue would not be the subject of expert testimony, and they did not have an expert who could render an opinion about the lighting, the appearance of the concrete, or the

visibility of the ice patch to counter Mr. Honig's surprise opinion. The Sirchios maintain that the only negligence cited by Mr. Honig in his report was that Mr. Sirchio was in a rush to get home to his sick wife, he had admittedly had a few drinks while watching the hockey game, and that he failed to exercise due care.

Pa.R.C.P. 4003.5(c) provides in pertinent part that "direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his . . . report"). They maintain that the rule is designed "to prevent incomplete or 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefor." Pa.R.C.P. 4003.5 comment. The Sirchios point to their broad discovery requests that were calculated to "force all of the expert's proposed testimony into the report, and prevent surprise at trial." [2] *Takes v. Metropolitan Edison Co*., 655 A.2d 138, 145 (Pa.Super. 1995), *rev'd in part on other grounds*, 695 A.2d 397 (Pa. 1997).

The Sirchios argue that the purpose of Rule 4003.5 was subverted by permitting the defense expert to testify outside the scope of his report herein. Furthermore, since the expert report did not touch on that subject matter of

---

[2] The Sirchios served interrogatories seeking to discover the opinions of Mr. MacDougall's trial experts. The defense responded that its investigation was continuing, and that it had not yet designated its trial expert. In lieu of supplementing that response when it retained Mr. Honig, the defense supplied his expert report, as is common. No expert deposition was taken.

the opinions, they were surprised by the expert opinion rendered and had no expert to rebut it.

Mr. Honig's expert opinion regarding Mr. Sirchio's ability to see the ice was not contained anywhere in his expert report, and certainly not at page 8, the first paragraph under "Conclusion." That paragraph provided:

> Based upon my over four decades of engineering and building construction experience, my review of the above-referenced documentation, and my knowledge of appropriate building and safety codes, it is my opinion, with a reasonable degree of engineering certainty, that this incident simply occurred due to the failure of Mr. Sirchio to exercise proper caution when traversing an exterior walkway affected by ongoing inclement weather conditions. He stated that he was aware of the active weather conditions on the pedestrian walkways along his path of travel, and confirmed that he elected to walk across the grass where the sidewalk had not been cleared of snow and/or ice.

Expert Report, Daniel M. Honig, P.E., 1/12/16, at 8.

"In determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, the question is whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness." *Brodowski v. Ryave*, 885 A.2d 1045, 1065 (Pa.Super. 2005) (*en banc*). Conspicuously absent from Mr. Honig's report is any opinion that the patch of ice was conspicuous, *i.e.*, distinguishable from dry concrete, or that given the lighting conditions, Mr. Sirchio would have been able to see it. Nonetheless, the trial court permitted the expert, over objection, to offer expert opinions regarding these matters.

At the hearing on post-trial motions, the trial court expressed skepticism at the Sirchios' claim of surprise, stating that, "lighting was pretty much a big issue during this entire trial." N.T. Post-Trial Motions, 8/18/16, at 14. Counsel for the Sirchios acknowledged that lighting was an issue, but pointed out that lighting was not addressed by either party's expert.[3] Counsel maintained that surprise and prejudice flowed from the fact that an expert, a person the jury perceived as authoritative, was permitted to render such an opinion, unrebutted by expert testimony. He argued, "if Mr. Honig . . . wanted to give an expert opinion on lighting conditions, he should have included that in his report and that's a problem. He never did that." *Id*. at 13-14.

I agree with the position articulated by the Sirchios. Mr. Honig's expert report did not contain any opinion regarding the lighting or what Mr. Sirchio would or should have seen, and I cannot account for my colleagues' conclusion

---

[3] No expert addressed the lighting or Mr. Sirchio's ability to see the ice in an expert report. However, both parties offered testimony from fact witnesses regarding the lighting. Mrs. Sirchio testified that she could only see the ice on the sidewalk when she used the flashlight on her phone. Mr. Sirchio testified that the light near the corner showed that the sidewalk was clear, prompting him to walk on it. N.T. Jury Trial Vol. II, 6/21/16, at 73. He added that the additional light from the streetlight across the street was behind the tree and did not illuminate the icy area. *Id*. at 74. Mr. Sirchio said he could not see the difference between the clear sidewalk and the icy portion. *Id*. Mr. MacDougall testified that at least some of the light from the streetlight at the corner illuminated the area of the sidewalk where Mr. Sirchio fell. N.T. Jury Trial Vol. III, 6/22/16, at 17. He disputed that the tree blocked the light from the streetlight across the street during the winter. *Id*. at 18. Nonetheless, he acknowledged that it would be more difficult to see ice on the sidewalk at nighttime. *Id*. at 33.

that the defense "expert's testimony was within the fair scope of the expert's report, and based on numerous prior references throughout the trial."[4] Majority Memorandum at 15. Furthermore, I do not understand the nature of the "references" to which the majority alludes or how they would justify the admission of an expert's opinion that was not contained in his expert report.

While my colleagues maintain that, in any event, the admission of Mr. Honig's expert opinion was not prejudicial to the Sirchios, I respectfully disagree. In finding no prejudice, the majority points to the "capable and productive cross-examination" of the expert conducted by counsel for the Sirchios as providing a meaningful response to Mr. Honig's testimony. It also dismisses as speculation the notion that the jury may have accorded greater weight to the testimony of an expert. Finally, it faults the Sirchios for not recalling their expert, even though the record establishes that Mr. Littlewood declined on cross-examination to express any opinion on the lighting because he discounted the reliability of nighttime photographs.

I submit that the Sirchos were genuinely surprised by the admission of previously undisclosed **expert opinion** that Mr. Sirchio "would have been able to see the ice." While expert testimony that exceeds the scope of a report has been held not to be unfairly prejudicial or surprising if it is offered as fair

---

[4] In his expert report, Mr. Honig merely quoted Mr. MacDougall's deposition testimony that the streetlight at the corner adequately lit the sidewalk. However, the expert report did not contain the expert's opinion regarding whether Mr. Sirchio could have seen the ice.

rebuttal to the other party's expert's testimony, or based upon facts learned by listening to testimony at trial, that was not the case herein. **Brady v. Ballay, Thornton, Maloney Medical Associates, Inc.**, 704 A.2d 1076, 1082 (Pa.Super. 1997); **see also Foflygen v. Allegheny Gen. Hosp.**, 723 A.2d 705, 710 (Pa.Super. 1999) (*overruled in part on other grounds by* **Shinal v. Toms**, 162 A.3d 429 (Pa. 2017) ("fair" in this context means that the testimony is not surprising or prejudicial). Mr. Honig's testimony did not constitute rebuttal, let alone fair rebuttal, as Mr. Littlewood, the Sirchios' expert, did not render any expert opinions regarding the lighting, the color of the concrete, or Mr. Sirchio's ability to see the ice.[5] Nor was Mr. Honig's opinion formed while listening to factual testimony at trial, as he expressly stated that his opinion that the ice was discernible was based on his review of Mr. Sirchio's deposition and photographs, the same materials that he utilized when he prepared his expert report that did not contain such an opinion.

This Court, on numerous occasions, has granted a new trial where an expert was permitted to testify beyond the scope of his expert report. In **Jones v. Constantino**, 631 A.2d 1289 (Pa.Super. 1993), we affirmed the grant of a new trial where a defense expert was permitted to testify as to the

---

[5] Mr. Littlewood acknowledged on **cross-examination** that "some of the light" from the streetlight reached the area where the ice had formed, but maintained that it was difficult to judge illumination levels in photographs taken at night as they might not accurately reflect the natural lighting conditions. N.T. Jury Trial Vol. II, 6/21/16, at 10.

specific cause of plaintiff's problem following gallbladder surgery, even though, in his expert report, he only generally opined that plaintiff's injury was unavoidable and not caused by negligence. We found that the defense expert's trial testimony exceeded the scope of his expert report, and there was prejudice in his "bald assertion of non-negligence in his expert report" and his "in-depth theory explaining absence of culpability at trial." *Id*. at 1295. We held that the report, which did not apprise the opponent of the basis for the expert's conclusion, failed to comport with Pa.R.C.P. 4003.5(c).

*Walsh v. Kubiak*, 661 A.2d 416 (Pa.Super 1995) (*en banc*), involved claims of medical malpractice and battery for lack of informed consent against an orthopedic surgeon. Although the defense expert's report only addressed the lack of negligence, the defense sought to elicit his expert opinion that the surgery was necessary. The trial court precluded the defense expert from expressing that opinion at trial because it exceeded the scope of his report. We affirmed on appeal, finding that nothing in the expert report would have prepared the plaintiff for that opinion. Consequently, the plaintiff would have been prejudiced as he did not have an expert to rebut it and was not adequately prepared to cross-examine the expert.

More recently, in *Woodard v. Chatterjee*, 827 A.2d 433 (Pa.Super. 2003), a motor vehicle accident case, we awarded a new trial where the trial court permitted plaintiff's medical expert to testify that the plaintiff sustained a cervical injury due to the accident, even though his expert report noted only

"some lingering neck pain and stiffness" from an earlier accident. *Id*. at 437. The trial court declined to award a new trial as it found no prejudice or surprise because the defendant was privy to the EMG report upon which the expert relied and "had adequate time to prepare a rebuttal." *Id*. at 442. We reversed, finding that, not only did the testimony exceed the fair scope of the expert's report, but it was prejudicial. The defendant lacked sufficient notice that the only trial expert would testify about the findings and diagnoses of other physicians to whom he made no reference in his own reports.

Finally, in ***Brodowski v. Ryave***, ***supra***, this Court, sitting *en banc*, affirmed the trial court's refusal to admit expert testimony regarding "what [defendant doctor] should have known or what inquiries, if any, he should have made to the unknown person who reported to him that night[,]" since it was not addressed in the expert's reports. We held therein that the proffered testimony was beyond the scope of the reports and constituted unfair surprise.

Hence, I believe Mr. Honig's expert opinion regarding Mr. Sirchio's ability to see the ice should have been excluded as outside the scope of his report. Furthermore, the expert opinion constituted unfair surprise to the Sirchios, who were not apprised of the opinion, and who had no expert to rebut it. I believe there was a very real danger that the jury accorded greater weight to the expert's testimony than lay testimony, especially since there was no controverting expert. The error certainly may have affected the verdict,

especially the jury's finding that Mr. Sirchio was not only negligent, but more negligent than Mr. MacDougall.

Where, as here, an erroneous evidentiary ruling harms the complaining party, the remedy is a new trial. **Woodard**, **supra** at 440-41. Since I believe the Sirchios should be afforded that remedy, I respectfully dissent.